**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra Jones,<br><br>        Plaintiff,<br><br>v.<br><br>Henhouse Incorporated, et al.,<br><br>        Defendants. | No. CV-22-02137-PHX-DJH<br><br>**ORDER** |

Defendants Henhouse Incorporated, et al., ("Defendants") have filed a Motion for Summary Judgment on Plaintiff Sierra Jones' ("Plaintiff") claims for Discrimination and Failure to Accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112, *et seq*. (Doc. 45). The matter is fully briefed. (Docs. 46–47). The Court denies Defendants' Motion in part and grants it in part for the following reasons.

**I.     Background[1]**

Plaintiff served as a hostess at one of Defendants' restaurants until she was terminated. (Doc. 45 at 6; Doc. 46 at 6). Plaintiff began working as a volunteer for Defendants through a high school program which placed special needs students with local businesses. (Doc. 45 at 3; Doc. 46 at 2). Defendants note that Plaintiff performed well in this voluntary roll, which included tasks such as rolling silverware and stocking to go cups and boxes. (Doc. 45 at 3). After she completed this program, Defendants hired Plaintiff as a hostess in March of 2016. (*Id.*) Defendants were aware of Plaintiff's disability when

---

[1] The following facts are undisputed, unless stated otherwise.

they hired her. (Doc. 45 at 3; Doc. 46 at 2). Plaintiff states that her parents met with Defendants' management about her ability to work with her disability and that one of Defendants owners, Mr. Brett Grebe, dismissed their concerns and said that she would be "fine." (Doc. 46 at 3).

Defendants state that the hostess is the "Ministers of First Impression" who initially greet patrons, get their name, ask whether they want to sit inside or outside, and find out how many people are in their party. (Doc. 45 at 4). Defendants note that hostess' duties include "pre-busing while they are on the floor, wiping fingerprints off the windows, rolling silverware, making sure the aisles are clear, and generally keeping the restaurant clean and free from water spots and spills," but chief among these, being present at the host stand. (*Id.*)

The reason behind Plaintiff's termination is hotly contested. Defendants state that, on September 7, 2016, there was an incident where Plaintiff locked herself in the only women's bathroom at the restaurant and was crying. (Doc. 45 at 6). Defendants state that Plaintiff eventually told staff that she could not "do this anymore" and walked out on her shift. (*Id.*) Defendants note that this was one of many emotional breakdowns Plaintiff had during her tenure as hostess despite Defendants providing her access to breaks and time to regroup her emotions—which other employees were not regularly entitled to. (*Id.* at 2, 5). They also note that there is no documentation of performance issues in Plaintiff's employee file because Mr. Grebe did not want to create a formal write-up to Plaintiff's file to avoid breaking her spirits or put more pressure on her. (*Id.* at 4).

Plaintiff disputes Defendants' version of events and advances her own. Plaintiff alleges that she did not receive any reprimands or write ups as none existed. (Doc. 46 at 4). Plaintiff bolsters this allegation with deposition testimony from Mr. Eric Reed, her manager, that "he had no performance issues with Plaintiff and stated that she was doing fine as an employee." (*Id.*) Plaintiff notes that Mr. Grebe also stated during his deposition that he had no knowledge of Plaintiff's work performance while she was employed at Henhouse. (*Id.*) Plaintiff asserts that, given these contradictions, she was terminated due

to her disability. (*Id*. at 5). Plaintiff also advances that there are material disputes about her termination. (*Id*.) For example, in the company's position statement submitted to the EEOC, Defendants state: "Our decision to terminate [Plaintiff] from employment was not in any way influenced by her disability. [Plaintiff] was discharged because of her inability to perform the tasks she was assigned. Additionally, management had to keep reminding [Plaintiff] to do work related tasks several times before she actually did it." (Doc. 46-1 at 110).

Due to the above alleged conduct, Plaintiff has brought claims for (1) Discrimination and (2) Failure to Reasonably Accommodate in violation of the ADA. (Doc. 1 at 28–44). Defendants now move for summary judgment on these claims.

**II.   Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id*. Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id*. at 250–51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the

1  burden shifts to the non-moving party, which must sufficiently establish the existence of a
2  genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*
3  *Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of
4  proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable
5  trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless,*
6  *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will
7  have the burden of proof, however, the movant can prevail "merely by pointing out that
8  there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*
9  *Corp.*, 477 U.S. at 323).
10  If the moving party meets its initial burden, the nonmoving party must set forth, by
11  affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine
12  issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). The non-moving party
13  must make an affirmative showing on all matters placed in issue by the motion as to which
14  it has the burden of proof at trial. *Celotex*, 477 U.S. at 322. The summary-judgment stage
15  is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show
16  what evidence it has that would convince a trier of fact to accept its version of events."
17  *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted).
18  In fact, the non-moving party "must come forth with evidence from which a jury could
19  reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,
20  387 (9th Cir. 2010) (citation omitted). In judging evidence at the summary judgment stage,
21  the court does not make credibility determinations or weigh conflicting evidence. Rather,
22  it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*
23  *Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).
24  **III.     Discussion**
25  Defendants move for summary judgment on Plaintiff's claims for Discrimination
26  and Failure to Accommodate. (Doc. 45 at 1). Defendants specifically argue that Plaintiff
27  could not perform the essential functions of her job. (*Id*. at 8). They also argue that her
28  Failure to Accommodate claim should be dismissed because she never sought any

accommodations from Defendants. (*Id*. at 10).

### A. Issues of Material Fact Exist Regarding Whether Plaintiff is a "Qualified Individual"

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that they are: (1) disabled; (2) qualified; and (3) suffered an adverse employment action because of their disability. *Menchaca v. Maricopa Comm. College Dist*., 595 F. Supp. 2d 1063, 1067 (D. Ariz. 2009). Title I of the ADA prohibits an employer from discriminating "against a **qualified individual** on the **basis of disability** in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). The term "qualified individual" under the ADA means: "[A]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Defendants limit their argument to the second element: whether Plaintiff is "qualified." (Doc. 45 at 2).[2] The Ninth Circuit has set forth a two-step inquiry to make this determination. *See Anthony v. Trax Int'l Corp*., 955 F.3d 1123, 1127–29 (9th Cir. 2020) (citing 29 C.F.R. § 1630.2(m)). First is the determination whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." *Id*. Second, "whether, 'with or without reasonable accommodation,' the individual is able to 'perform the essential functions of such position.' " *Id*. (citation omitted). If a disabled person cannot perform a job's essential functions, even with a reasonable accommodation, the ADA's employment protections do not apply. *Cripe v. City of San Jose*, 261 F.3d 877, 884–85 (9th Cir. 2001).

Defendants argue that Plaintiff is not qualified because she could not perform the

---

[2] Defendants do not dispute that Plaintiff is disabled under the ADA (Doc. 47 at 4) and "assumes" that Plaintiff was terminated (Doc. 45 at 2). Defendants only argument is whether Plaintiff is a "qualified individual."

- 5 -

essential job functions of the hostess position. (Doc. 45 at 8). They do not argue that she could not satisfy the first step: the requisite skill, experience, education or other job-related requirements of the employment position. So, since the essential functions step is the crux of this issue, the Court will limit its discussion to step two and determine whether Plaintiff, with or without reasonable accommodations, can as a matter of law perform the essential functions of the hostess job. *See Beem v. Providence Health & Servs*., 2012 WL 1579492, at *2 (E.D. Wash. May 4, 2012) ("first, a court inquires as to the job's essential functions, after which the plaintiff must establish that she can perform those functions with or without reasonable accommodations.").

### 1. Essential Functions of a Job

The burden falls on the employee to demonstrate that she can perform the essential functions of a job with or without a reasonable accommodation. *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996). However, the employer has the burden of establishing what job functions are essential, *see Samper v. Providence St. Vincent Med. Ctr*., 675 F.3d 1233, 1237 (9th Cir. 2012), because "much of the information which determines those essential functions lies uniquely with the employer." *Bates v. United Parcel Svc., Inc*., 511 F.3d 974, 991 (9th Cir. 2007) (en banc).

A job's essential functions are "fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position." *Bates*, 511 F.3d at 991 (quoting 29 C.F.R. § 1630.2(n)(1)). " 'Essential functions' are not to be confused with 'qualification standards,' which an employer may establish for a certain position." *Id*. Essential functions are "basic duties," while qualification standards are "personal and professional attributes that may include 'physical, medical [and] safety' requirements. The difference is crucial." *Id*.

The EEOC regulations cite several reasons for including a job function as "essential," including: (i) the reason the position exists is to perform that function; (ii) a limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) the function may be highly specialized so that the incumbent

- 6 -

in the position is hired for his or her expertise or ability to perform the particular function. *See* 29 C.F.R. § 1630.2(n)(2). Evidence of what is essential includes:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3); *see also* 42 U.S.C. § 12111(8). Where there is a "conflict in the evidence regarding the essential functions of [a position], we conclude that there is a factual dispute . . . notwithstanding the job descriptions that [an employer] has prepared." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009) (quoting *Cripe v. City of San Jose*, 261 F.3d 877, 888–89 (9th Cir. 2001)).

### 2. Essential Functions of the Hostess Position

Defendants state that the host or hostess position is the entry level position at the restaurant, which is typically filled by a person with limited or no working experience. (Doc. 45 at 4). Nevertheless, Defendants detail several essential functions of this position, including:

> remaining at the hostess stand, greeting customers, and seating customers [as well as] pre-busing while they are on the floor, wiping fingerprints off the windows, rolling silverware, making sure the aisles are clear, [] generally keeping the restaurant clean and free from water spots and spills . . . wiping down the hostess podium, monitoring the seating chart, and checking the wait list.

(Doc. 45 at 4, 9). Plaintiff argues that the testimony of Defendants management officials and owner shows that she could perform the essential functions of the hostess position, even with her learning disability. (Doc. 46 at 14).

Indeed, during Manager Eric Reed's deposition he agreed that Plaintiff was a "good employee" during her time as a student volunteer. (Doc. 45-6 at 5). However, he also

1  testified that Plaintiff said "I can't do this anymore I have to leave" before she left on the
2  day of the incident. (*Id*. at 6). Mr. Reed confirmed that Plaintiff locked herself in the
3  women's bathroom on the day of the incident and was crying. (*Id*. at 7). He noted that
4  Ms. Rhea Dameron, the lead server on the day of the incident, called him to come to the
5  restaurant to try and get her to come out. (*Id*.) Mr. Reed did not know if Plaintiff was
6  ever asked if she needed an accommodation. (*Id*. at 9). Mr. Reed confirmed that the
7  hostess position is an entry level position but emphasized that "every job is just as
8  important" because without one position the restaurant can't run properly. (*Id*. at 13).

9  Further, Ms. Tina Wagoner testified about Plaintiff's inability to perform certain job
10 functions as well as the bathroom incident. She stated that she has had discussions with
11 Plaintiff about talking with guests instead of performing her job duties. (Doc. 45-7 at 6).
12 Ms. Wagoner stated that, on the day of the incident, Plaintiff had an emotional breakdown
13 and that she sat Plaintiff in a private room and talked to her "because she was unable to do
14 her job." (*Id*. at 7). Ms. Wagoner added that Plaintiff was crying and could not do her job,
15 so a server had to take over the hostess station. (*Id*. at 7–8).

16 Conversely, Plaintiff testified that this incident never occurred. She states that Ms.
17 Wagoner pulled her aside and said that Defendants were letting her go because they were
18 entering their busy season: snowbird season. (Doc. 46-1 at 103–104). She also stated that
19 Mr. Reed never arrived at the restaurant during this period. (*Id*. at 105). Plaintiff's Mother,
20 Mrs. Randi Jones, also testified that when Defendants offered her a job, she had concerns.
21 (Doc. 46-1 at 25). She was concerned that Plaintiff would not be able to calculate wait
22 times as she was still in third grade math. (*Id*.) She also worried that Plaintiff would need
23 more time to understand what her tasks are as well as more explanation of certain things.
24 (*Id*. at 26–27). She explained this to Mr. Grebe, but states that he assured her Plaintiff
25 would be "fine" as his kids cannot do math either. (*Id*. at 30). Mrs. Jones noted that no
26 one ever voiced any concerns about Plaintiff to her. (*Id*. at 31). Mrs. Jones also
27 corroborates Plaintiff's version of events: that Ms. Wagoner told her that Defendants had
28 to let her go because she could not keep during the busy season. (*Id*. at 32). Defendants'

- 8 -

managers and owner have confirmed that it regularly documents performance issues of its employees in their employee file; yet, as Plaintiff notes, her file is clean of any performance issues or write-ups. (*See e.g.*, Doc. 45 at 4; Doc. 46 at 11).

The Court finds that plaintiff has, at the very least, shown that a genuine dispute of fact exists as to whether she could perform the essential job duties of a hostess. *Celotex Corp.*, 477 U.S. at 322–23. Defendants have produced evidence that Plaintiff struggled to perform the essential functions of this role, such as Ms. Wagoner's testimony that she had to remind her to do her other duties instead of talking to customers. (Doc. 45-7 at 6). Defendants' evidence concerning the events leading up to Plaintiff's last day is persuasive. However, Plaintiff has also set forth persuasive evidence that rebuts Defendants' evidence. Plaintiff and Mrs. Jones testimony paints an entirely different picture: that she was terminated due to her disability. Indeed, based on this evidence, as Plaintiff notes, a reasonable fact finder could find that Defendants stated reasons for termination are pretext for discrimination. (Doc. 46 at 12). This is precisely the type of credibility determination or weighing of conflicting evidence which is reserved for a jury—and which the Court should refrain from. *See T.W. Electric Service*, 809 F.2d at 630–31. In sum, Plaintiff has set forth evidence which a jury could rely on to render a verdict in Plaintiff's favor, so, summary judgment is not appropriate here. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

### B. Failure to Accommodate

Defendants also argue that Plaintiff's failure to accommodate claim should be dismissed as they attempted to make reasonable accommodations for her, such as being able to take extra breaks if needed. (Doc. 45 at 10, 12). They specifically assert that Plaintiff has not made a *prima facie* showing that any reasonable accommodation was possible. (*Id.*) Plaintiff argues that Defendants failed to engage in the interactive accommodation process by preemptively terminating her before Defendants' busy season. (Doc. 46 at 18–19).

To establish a *prima facie* failure to accommodate claim under the ADA, an

employee must show that (1) they are disabled within the meaning of the ADA, (2) they are a qualified individual that can perform the essential functions of the job with or without reasonable accommodation, and (3) that they suffered an adverse employment action because of their disability. *See LeBarron v. Interstate Grp., LLC*, 529 F. Supp. 3d 1163, 1171 (D. Nev. 2021). Reasonable accommodations do not include "exemptions from essential functions of a job." *Id.*

"[O]nce an employee requests an accommodation . . . the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010). The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Williams v. G & K Servs. Inc.*, 2018 WL 8262768, at *10 (D. Ariz. Mar. 30, 2018) (citations omitted). To survive summary judgment, the employee must identify a facially reasonable accommodation. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). This is so even if the defendant did not engage in a good faith interactive process. *See Yonemoto v. McDonald*, 114 F.Supp.3d 1067, 1115 n. 21, 2015 WL 4232374, *43 & n. 21 (D. Haw. 2015) (collecting cases). The court "should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

Even if the Court were to find that Defendants failed to engage in the interactive process, Plaintiff's claim fails because she did not, and has not, identified a facially reasonable accommodation. *See Dark*, 451 F.3d at 1088. Plaintiff essentially argues that the burden was on Defendants to begin the interactive process. (*See* Doc. 46 at 18–20). However, the interactive process begins "once an *employee* requests an accommodation." *Zivkovic*, 302 F.3d at 1089; *UPS Supply Chain Solutions*, 620 F.3d at 1110 (emphasis added). Plaintiff does not argue or allege that she ever requested an

accommodation, only that it was an affirmative duty Defendants should have undertaken without a request. (*See* Doc. 46 at 18–20). Even so, Defendants did attempt to make reasonable accommodations for Plaintiff such as being able to take extra breaks if needed. (Doc. 45 at 12). In sum, Plaintiff has failed to set forth evidence that she requested an accommodation or identify a facially reasonable accommodation; so, her failure to accommodate claim fails as a matter of law. *See Zivkovic*, 302 F.3d at 1089; *Dark*, 451 F.3d at 1088.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 45) is **GRANTED** in part and **DENIED** in part. Plaintiff's Failure to Accommodate claim is **DISMISSED** but her Discrimination claim will remain.

**IT IS FURTHER ORDERED** that in light of Plaintiff's remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 16 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 21st day of January, 2025.

Honorable Diane J. Humetewa
United States District Judge